UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES D. SLATER, JR., | : | 1:11-CV-00494 |
| | : | |
| Plaintiff | : | |
| | : | (Judge Caldwell) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| DONNA (JANE DOE), Warden of the | : | |
| Lackawanna County Jail, *et al.,* | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

The plaintiff, Charles D. Slater, Jr., claims that the defendants violated his state and federal constitutional rights while he was a pretrial detainee at the Lackawanna County Prison. Those defendants who have been properly served have filed a motion for summary judgment, which we recommend be granted as to all claims except the 42 U.S.C. § 1983 claim based on a March 2009 use-of-force incident. We also recommend that those defendants who have not been properly served be dismissed. Finally, we recommend that the case be listed for trial on the § 1983 claim based on the March 2009 use-of-force incident.

## II. Background and Procedural History.

Slater, proceeding *pro se* and *in forma pauperis,* began this action by filing a complaint on March 16, 2011, and he later filed an amended complaint. After counsel was appointed to represent him, Slater filed a second amended complaint on September 27, 2011. The second amended complaint names the following defendants: Janine Donate,[1] the former Warden of the Lackawanna County Prison (LCP); Sergeant Masci;[2] Officer Shnipes;[3] an unnamed Deputy Warden; John Does 1-8, corrections officers at the LCP; a psychiatrist identified only as Ramen; a Nurse identified only as Gene; and a physician's assistant identified only as Tony.

Slater alleges that he was incarcerated at the LCP in April of 2008, after he was charged with a sexual offense against an adult female. According to Slater, while at the LCP he was not given medication for his psychiatric conditions, including bipolar disorder. He alleges that he was denied his psychiatric medications from April 14, 2008, until November 20, 2008, when he was sent to a

_____

[1] The second amended complaint identifies this defendant as Donna (Jane Doe) Warden, and then as Janine Donato. Defense counsel identifies this defendant as Janine Donate. We use the spelling provided by defense counsel for this and the other defendants.

[2] The second amended complaint identifies this defendant as Sergeant Machie.

[3] The second amended complaint identifies this defendant as Officer Snippet.

state correctional institution for an evaluation. He also alleges that he was given medication for his diabetes only intermittently, and at times he was not able to use his Continuous Positive Airway Pressure (CPAP) machine, which he needed because he suffered from sleep apnea.

Slater alleges that officers, including John Does 1-3, Masci, and Shnipes, mistreated him: they deprived him of food, did not allow him to shower, and subjected him to verbal abuse. He also alleges that officers threatened him because they had heard that he was a sex offender, and they labeled him a rapist and a pedophile. As a result, inmates harassed Slater such as by throwing urine into his cell. According to Slater, Shnipes spread a rumor that he had raped a 6-year old and a 7-year old girl. He alleges that the rumor was false, that he does not know the basis for such an accusation, and that he was only charged with a sex offense against an adult female. After the rumor, other inmates physically and mentally abused Slater. Although Shnipes, Masci, and John Does 1-3 were aware of the abuse, according to Slater, they took no action to stop the abuse, and, in fact, they condoned it. Slater alleges that during this time, he was severely distraught because of the abuse and because he was denied his medication.

Slater alleges that some of the defendants used force against him on a number of occasions. According to Slater, in June of 2008, during a routine cell check, Shnipes and John Doe 4 entered his cell, and Shnipes slammed him against the wall and commented about his belief that Slater had raped children.

Slater alleges that, in July of 2008, another inmate damaged a cell door with a pen, but Slater was blamed and placed in isolation—the hole—for 14 days. According to Slater, while in the hole, various officers, including one or more of the John Doe defendants, verbally harassed him, told other inmates that he was a pedophile, and encouraged other inmates to spit on him. On July 24, 2008, hearing other inmates say that the Warden was on the block, Slater yelled to get the Warden's attention. Slater alleges that the Warden looked at him, he told her that he was being physically abused, and he begged for her help. But, according to Slater, she just turned and walked away. Slater alleges that the next day, John Doe 5 took him to an area outside that the officer knew could not be viewed from a working camera. There, John Doe 5 allegedly slammed Slater against a fence, told other inmates that Slater was a pedophile, called Slater a pussy, and told Slater that he wanted to use his head for a punching bag.

According to Slater, on another occasion, John Doe 6, in the presence of Shnipes, slammed him against a wall, told him that he knew he was guilty because he had accepted a plea bargain, and told him that he could bash his head in, if he wanted, and get away with it by saying that another inmate did it.

Slater alleges that, on September 13, 2008, because of the abuse he had endured, the denial of his medications, and his deteriorating mental state, he stopped eating. According to Slater, in mid-October of 2008, when he was in a hallway after being seen by a nurse, Shnipes approached him, grabbed him by the neck, slammed him against a window, and told him that he would "hog tie" him like he had done to another inmate. After another officer told Shnipes that Slater was allowed to be in the hallway because he had just seen the nurse, Shnipes released Slater.

On November 20, 2008, Slater was sent to the State Correctional Institution at Camp Hill for a psychological evaluation. He was assigned a counselor and put on appropriate medication for his psychiatric condition, and he remained stable until he was transferred back to the LCP in January of 2009. Slater alleges that upon his

return to the LCP, the psychiatrist took his medication and told him that he would not be provided with it at the LCP.

Slater alleges that, at the end of March, 2009, he became angry because he believed that a corrections officer had destroyed some of his personal papers, and he used profanity to address the officer. As result, he was sent to the hole. Angry about being sent to the hole, Slater flooded his cell by blocking his toilet. When asked, he admitted that he had done so. According to Slater, Masci, in the presence of three or four other officers, shackled and handcuffed him, and Masci placed what appeared to be a shackle around Slater's neck, choked him, and said "Die, Mother F _ _ _ _ _ , Die." Slater alleges that Masci and John Does 7 & 8 then beat him and bashed his head against the wall and floor. They also allegedly threatened him and told him that he better tell the nurse that he had slipped. Slater alleges that although he told the Warden and Deputy Warden about the beating, neither of them took any action. In fact, according to Slater, the Deputy Warden told him that he got what he deserved, and he threatened Slater with new charges arising from the incident. Slater alleges that he informed physician's assistant Tony that he had been beaten, and Tony said that he deserved it.

The second amended complaint contains two counts. Count One contains 42 U.S.C. § 1983 claims based on the Eighth and Fourteenth Amendments. Count Two contains claims based on the Pennsylvania Constitution. As to both counts, Slater seeks compensatory and punitive damages.

In November of 2011, Sean P. McDonough, Esquire entered his appearance on behalf of defendants Donate, Masci, Shnipes, Deputy Warden, and John Does 1-8 (the moving defendants),[4] and in December of 2011, these defendants filed an answer to the second amended complaint. After discovery was completed, the moving defendants filed a motion for summary judgment, which, for the reasons discussed below, we recommend be granted in part and denied in part.

_____

[4] No counsel has entered an appearance on behalf of the following: the psychiatrist identified in the second amended complaint as Ramen; the nurse identified as Gene; and the physician's assistant identified as Tony. It does not appear that these defendants have been served, and they are not represented by counsel. For ease of reference, unless otherwise specified, references to the defendants in this Report and Recommendation are references to defendants Donate, Masci, Shnipes, Deputy Warden, and John Does 1-8, who are represented by counsel.

## III. Discussion.

### A. Summary Judgment Standard.

The defendants have moved for summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Through summary adjudication the court may dispose of those claims that do not present a 'genuine dispute as to any material fact' and for which a jury trial would be an empty and unnecessary formality." *Goudy-Bachman v. U.S. Dept. of Health & Human Services*, 811 F. Supp. 2d 1086, 1091 (M.D. Pa. 2011)(quoting Fed.R.Civ.P. 56(a)).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that

is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)(quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can

be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex,* 477 U.S. at 323). "[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

**B. The Statute of Limitations Bars Most of Slater's 42 U.S.C. § 1983 Claims.**

The defendants contend that all of the 42 U.S.C. § 1983 claims, except the claim based on the March 2009 excessive force incident, are barred by the statute of limitations.[5]

"A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims." *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). Pennsylvania, the applicable state in this case, mandates a two-year statute of limitations for personal injury claims. 42 Pa.C.S. § 5524(2). Thus, a § 1983 claim arising in Pennsylvania is subject to a two-year statute of limitations. *Fitzgerald v. Larson*, 769 F.2d 160, 162 (3d Cir. 1985).

Federal law governs when a cause of action accrues. *Dique*, 603 F.3d at 185. A § 1983 cause of action "'accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.'" *Id.* at 185-86 (quoting

---

5 Although the heading of the argument section of the defendants' brief refers only to excessive force incidents, in the body of the argument section of their brief, the defendants contend that all claims except the claim based on a March 30, 2009 use-of-force incident should be dismissed.

*Wallace v. Kato*, 549 U.S. 384, 391 (2007)). In other words, the cause of action accrues "when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 549 U.S. at 388 (citations omitted). On the other hand, "[s]tate law, unless inconsistent with federal law, . . . governs the concomitant issue of whether a limitations period should be tolled." *Dique,* 603 F.3d at 185.

In this case, although the complaint was not filed until March 16, 2011, the complaint is dated March 10, 2011. Giving Slater the benefit the prisoner mailbox rule,[6] we will use March 10, 2011 as the date this case was filed. Thus, all the § 1983 claims that accrued more than two years before that date (i.e., before March 10, 2009) are barred by the statute of limitations. All of Slater's claims accrued prior to March 10, 2009 except the claim based on the March 30, 2009 use-of-force incident.

Masci was involved in the March 30, 2009 incident. Slater asserts that during discovery he discovered that a Lieutenant Oleski and Sergeant Gallagher

---

[6] "The federal "prisoner mailbox rule" provides that a document is deemed filed on the date it is given to prison officials for mailing." *Pabon v. Mahanoy*, 654 F.3d 385, 391 (3d Cir. 2011).

were also involved in that incident, and he seeks to substitute Oleksi and Gallagher for John Does 7 and 8.[7]  "The naming of a John Doe defendant in a complaint does not stop the statute of limitations from running or toll the limitations period as to that defendant." *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003).  And counsel for the John Does argues that any claims against them are barred by the statute of limitations.  Slater counters by arguing that, under Fed.R.Civ.P. 15(c), an amendment to the complaint naming Oleski and Gallager would relate back to the date of the second amended complaint, and thus, according to Slater, the claims against Oleski and Gallager are not barred by the statute of limitations.

---

7 Slater does not allege that any of the other moving defendants were involved in the use-of-force incident.   He does allege that, after the incident, he told the Warden and the Deputy Warden about the beating.   "'Such after-the-fact notice does not amount to actual knowledge and acquiescence in a past wrong.'" *Smith v. Merline*, 797 F. Supp. 2d 488, 505 (D.N.J. 2011)(quoting *Walsh v. Corzine*,.2:06-CV-6075, 2010 WL 2516463 at *2 (D.N.J. June 14, 2010)).   Thus, Slater has not shown that either the Warden or the Deputy Warden were personally involved in the incident. Slater also alleges that the Deputy Warden told him that he got what he deserved. However inappropriate or asinine, such a statement in and of itself is not a constitutional violation. *See Tompkins v. Cnty. of Lackawanna,* 1:CV-11-1147, 2013 WL 593756 (M.D. Pa. Feb. 14, 2013)("[M]ere words spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights by the officer.")

Federal Rule of Civil Procedure 15(c)(1) provides when an amendment

relates back to the date of an earlier pleading:

> **(1)** *When an Amendment Relates Back.* An amendment to
> a pleading relates back to the date of the original pleading when:
> **(A)** the law that provides the applicable statute of
> limitations allows relation back;
> **(B)** the amendment asserts a claim or defense that arose
> out of the conduct, transaction, or occurrence set out—or
> attempted to be set out—in the original pleading; or
> **(C)** the amendment changes the party or the naming of the
> party against whom a claim is asserted, if Rule 15(c)(1)(B) is
> satisfied and if, within the period provided by Rule 4(m) for
> serving the summons and complaint, the party to be brought in
> by amendment:
> **(i)** received such notice of the action that it will not be
> prejudiced in defending on the merits; and
> **(ii)** knew or should have known that the action would have
> been brought against it, but for a mistake concerning the proper
> party's identity.

"Relation back is structured 'to balance the interests of the defendant

protected by the statute of limitations with the preference expressed in the Federal

Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes

on their merits.'" *Glover v. Fed. Deposit Ins. Corp.,* 698 F.3d 139, 145 (3d Cir.

2012)(quoting *Krupski v. Costa Crociere S.p.A.,* 130 S.Ct. 2485, 2494 (2010)). "If

the amendment relates back to the date of the filing of the original complaint, the

amended complaint is treated, for statute of limitations purposes, as if it had been filed at that time." *Garvin*, 354 F.3d 215, 220 (3d Cir. 2003). "The relation back provision of Rule 15(c) aims to ameliorate the harsh result of the strict application of the statute of limitations." *Id.*

Slater contends that relation back is appropriate under Fed.R.Civ.P. 15(c)(1)(C). That Rule imposes "three conditions, all of which must be met for successful relation back of an amended complaint that seeks to substitute newly named defendants." *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 194 (3d Cir. 2001). "[A] plaintiff must show that: (1) the claim or defense set forth in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading; (2) within the time period provided in Rule 4(m), the party or parties to be added received notice of the institution of the suit and would not be prejudiced in maintaining a defense; and (3) the party sought to be added knew that, but for a mistake concerning his or her identity, he or she would have been made a party to the action." *Garvin*, 354 F.3d at 222.

In this case, the first condition—that the claim against the new defendants arose out of the same conduct, transaction, or occurrence set forth in the original

complaint—is met because Slater contends that Oleski and Gallagher were involved in the March 30, 2009 incident, which was set forth in the original complaint. Slater's argument for relation back falters, however, on the second condition necessary for relation back—that the new defendants received notice of the action within the time set forth in Fed.R.Civ.P. 4(m), i.e., 120 days, such that they will not be prejudiced in defending the action on the merits. This second condition, has two parts—notice and the absence of prejudice. *Singletary,* 266 F.3d at 194. Slater contends that under the "shared attorney" method of imputing notice, he satisfies the second condition.

"The "shared attorney" method of imputing . . . notice is based on the notion that, when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Id.* at 196. "[T]he fundamental issue . . . is whether the attorney's later relationship with the newly named defendant gives rise to the inference that the attorney, within the 120 day period, had some communication or relationship with, and thus gave notice of the action to, the newly named defendant." *Id.* at 196-97. Thus, in order to succeed

under the "shared attorney" method of imputing notice, "the plaintiff must show that there was 'some communication or relationship' between the shared attorney and the John Doe defendant prior to the expiration of the 120-day period." *Garvin*, 354 F.3d at 225.

Slater suggests that the relevant time period for notice is 120 days from the filing of the second amended complaint, which was filed on September 27, 2011. In this case, Mr. McDonough, counsel for the defendants, entered his appearance on November 2, 2011, and filed an answer to the second amended complaint on December 2, 2011—both within 120 days of when the second amended complaint was filed. Thus, according to Slater, McDonough is likely to have had some communication or relationship with Oleski and Gallagher and, thus, he is likely to have given them notice of the action within 120 days of the filing of the second amended complaint. Therefore, Slater continues, he satisfies the second condition for relation back through the "shared attorney" method of imputing notice.

The problem with Slater's argument is that the relevant 120-day period is not the 120-day period after the filing of the second amended complaint: it is the 120-day period after the filing of the original complaint. The original complaint

was filed within two years of the March 30, 2009 incident, but the second amended complaint was not. All that using the 120-day period after the filing of the second amended complaint gets Slater is relation back to the date of the filing of the second amended complaint, which is still not within the statute of limitations. Only if Oleski and Gallagher shared an attorney with the other defendants named in the original complaint within the 120-day period after the filing the original complaint may Slater use the "shared attorney" method of imputing notice to avoid the statute of limitations bar as to his claims against Oleski and Gallagher. Slater has not argued that Oleski and Gallagher shared an attorney with the other defendants within that time frame, and there is no evidence, or reasonable basis to infer, that they did. In fact, Mr. McDonough did not enter his appearance until November 2, 2011, and the court did not even order service on any of the defendants in this case until October 4, 2011, both of which dates were more than 120 days after the original complaint was filed. Thus, Slater does not satisfy the second condition for relation back,[8] and the claims against Oleski and Gallagher are barred by the statute of limitations.

---

[8] Because Slater does not satisfy the second condition for relation back under Rule

**C. Masci Is Not Entitled to Summary Judgment as to the March 2009 Use-of-Force Incident.**

Defendant Masci seeks summary judgment on the merits of Slater's claim based on the March 30, 2009 incident. Since Slater was a pretrial detainee,[9] rather than a convicted prisoner, at time of the incident, the Due Process Clause, rather than the Eighth Amendment, applies. *Boring v. Kozakiewicz,* 833 F.2d 468, 471 (3d Cir. 1987)("Pretrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause."). The due process rights of pretrial detainees are "at least as great" as the Eighth Amendment protections

---

15(c)(1)(C), we need not reach the question of whether he satisfies the third condition—whether, within the 120-day period, Oleski and Gallagher knew that, but for a mistake concerning their identities, they would have been made parties to the action.

9 The docket from Slater's criminal case in the Court of Common Pleas of Lackawanna County reveals that Slater was not sentenced until April 22, 2009. *Commonwealth v. Slater,* CP-35-CR-0001140-2008 (docket available from the Unified Judicial System of Pennsylvania's website: http://ujsportal.pacourts.us). The court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2). The docket in Slater's criminal case is a public record of which we can take judicial notice. *See Wilson v. McVey*, 579 F. Supp. 2d 685, 688 (M.D. Pa. 2008)(taking judicial notice of court docket).

available to convicted prisoners. *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983).   In the excessive force context, the United States Court of Appeals for the Third Circuit has applied the standards enunciated in Eighth Amendment cases to excessive force claims by pretrial detainees. *See Williams v. Fields*, 11-3646, 2013 WL 4498670 at *3 n.4 (3d Cir. Aug. 23, 2013)(analyzing excessive force claim of a pretrial detainee under the standards set forth in Eighth Amendment cases); *Drumgo v. Brown*, 525 F. App'x 125, 128 (3d Cir. 2013)(same).

When prison officials are accused of using excessive force, the inquiry "is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).   Since this analysis entails issues of motivation, such claims often turn on factual disputes which cannot be resolved as a matter of law.   Consistent with this fact-bound approach to the litigation of these claims, there are several factual considerations that a court must examine in determining whether a correctional officer has used excessive force, including: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff

and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)(quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Not "every malevolent touch by a prison guard" violates the Constitution. *Hudson,* 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* (quoting *Whitley,* 475 U.S. at 327). Thus, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

The extent of injury suffered is a consideration that may be relevant to determining if the force could have plausibly been thought necessary. *Id.* at 37. "The extent of injury may also provide some indication of the amount of force applied." *Id.* But to establish an excessive force claim, an inmate does not need to show that he suffered a significant, or even a more than *de minimis*, injury. *Id.*

Rather, the central issue is the force used by the officer, not the injury caused by the officer. *Flood v. Schaefer*, 439 F. App'x 179, 182 (3d Cir. 2011).

Here, there are genuine factual disputes about what happened during the incident. Masci testified at his deposition that, after Slater flooded his cell, he went to the cell to talk to Slater, and he noticed that Slater's CPAP machine was plugged into the wall but part of it was unplugged from the unit and laying in water. *Doc. 78-6* at 16. Masci testified that "[b]asically it was just a free line from the outlet to the water," and he believed this was an attempt by Slater to harm him and other officers. *Id.* So, according to Macsi, he instructed Slater to stand up and be handcuffed so that he could be removed from the cell. *Id.* at 16-17. Lieutenant Oleski also testified that when he entered the cell he noticed that Slater's CPAP machine was plugged into the wall and part of the machine was in the water, and although he didn't know if that would complete a circuit or not, he thought it was an attempt by Slater to cause bodily harm to the officers. *Doc. 78-7* at 14. Further, according to Masci, after he entered the cell and attempted to handcuff Slater, Slater grabbed his arm, and then Masci, with the assistance of Gallagher, subdued Slater. *Doc. 78-6* at 16-19. Masci testified that he picked Slater up and subdued him to the

ground, and then Gallager held Slater's hands to his belly so that he could be handcuffed. *Id.* at 17-18.

Slater, however, tells a different story. He testified at his deposition that, when the officers came to his cell he told them, without prompting, that the wire to his CPAP machine was under the door. *Doc. 78-3* at 16. Although Slater's testimony is not entirely clear, construed in the light most favorable to him, he testified that there was no water in the area of his CPAP machine. *Id.* at 19 ("And there was no water, my machine was right there. My machine was at the block. I didn't do nothing wrong to them. They beat me for nothing. I didn't do it."). Slater also testified that, after he was ordered to go to the back of his cell, he put his hand out and as soon as he did so, Masci beat and choked him. *Id.* at 16. Slater testified that he grabbed Masci's arm when Masci choked him. *Id.* at 17. Then, according to Slater, another officer, pushed him and took his arm and twisted it. *Id.* He testified that he asked for help, but the officers beat him. *Id.* And, as Slater tells it, before the officers called a nurse, they had him on his knees and they told him to tell the nurse that he slipped and fell while handcuffed. *Id.* at 19.

It is undisputed that when the officers took Slater to the floor, he hit his head on the bunk and cut his forehead. *See Doc. 78 (Defendants' Statement of Material Facts)* at ¶15 and *Doc. 80 (Slater's Response to the Defendants' Statement of Material Facts)* at ¶15. Slater received medical treatment following his removal from the cell. *Id.* at ¶16. He had an abrasion above his right eye that was cleaned and dressed, swelling was noted, and there was a small amount of bleeding, which stopped. *Id.* at ¶22.

Although Slater suffered only minor injuries, there is a genuine dispute about what actually happened during the incident, *i.e.*, whether Masci beat and choked Slater or whether Masci used only the force necessary to subdue Slater after Slater grabbed his arm. This dispute is material: a reasonable factfinder that believes Slater's version of the events could conclude that Masci used excessive force. Thus, there is a genuine, material factual dispute that precludes summary judgment in favor of Masci.

### D. In Addition to Being Barred by the Statute of Limitations, the Medical Claims Against the Moving Defendants Fail on the Merits.

The moving defendants contend that, in addition to Slater's medical claims being barred by the statute of limitations, those claims against them fail on the merits because they are not medical professionals and Slater's dissatisfaction with his medical treatment cannot be attributed to them.

In order for a prisoner to establish a medical-care claim, he must establish that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *see also Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995)("Failure to provide medical care to a person in custody can rise to the level of a constitutional violation under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs."). A prison official is not deliberately indifferent simply because he or she failed to respond to a prisoner's medical complaints when the prisoner was already being treated by a prison doctor. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison

official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

Slater has not responded to the defendants' contention that they are not medical professionals and Slater's dissatisfaction with his medical treatment cannot be attributed to them. Accordingly, we conclude that he concurs with the defendants' argument. Moreover, he has not presented any evidence that the moving defendants violated his rights in connection with his medical treatment. Thus, the medical claims against the moving defendants fail on the merits.

### E. Slater Cannot Recover Monetary Damages under the Pennsylvania Constitution.

Count 2 of the second amended complaint is based on the Pennsylvania Constitution. While the second amended complaint does not specify which section of the Pennsylvania Constitution is at issue, in his brief, Slater asserts that his claims are based on Article I, Section 1 of the Pennsylvania Constitution, which provides that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of

pursuing their own happiness." PA. CONST. art. I, § 1.  Slater is seeking monetary damages.

Although the Pennsylvania Supreme Court has not determined whether there is a cause of action for damages under the Pennsylvania Constitution, the majority of courts in this circuit that have decided the issue have concluded that there is no such cause of action for monetary damages under the Pennsylvania Constitution. *See e.g. Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F.App'x 681, 687 (3d Cir. 2011)(noting that "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution" and holding that the "District Court properly dismissed the plaintiffs' claims for monetary relief under the Pennsylvania Constitution"); *Hamilton v. Spriggle*, 4:09-CV-1801, 2013 WL 4417701 at *23 (M.D. Pa. Aug. 14, 2013)(Report and Recommendation)(noting that the prevailing view in this circuit is that there is no private right of action for damages under the Pennsylvania Constitution), *adopting Report and Recommendation,* 2013 WL 4417701 at *14 (M.D. Pa. Aug. 14, 2013); *Ryan v. General Machine Prods.,* 277 F.Supp.2d 585, 595 (E.D.Pa. 2003) (dismissing claim under the Pennsylvania Constitution and stating

that the federal courts in this circuit that have considered the issue have concluded

that there is no private right cause of action for damages under the Pennsylvania

Constitution); *see also, Jones v. City of Philadelphia*, 890 A.2d 1188, 1216 (Pa.

Commw. Ct. 2006)( holding "that, in this case, there is no separate cause of action

for monetary damages for the use of excessive force in violation of Article I, Section

8 of the Pennsylvania Constitution"); *Balletta v. Spadoni*, 47 A.3d 183, 193 (Pa.

Commw. Ct. 2012)("In short, there is no Pennsylvania state case law that permits an

action for monetary damages based on a claimed violation of the state

constitution.").   The courts considering Article 1, Section 1, the specific provision

at issue here, have also held that there is no cause of action for monetary damages

under that provision. *See, Mintz v. Upper Mount Bethel Twp.*, CIV.A. 12-6719, 2013

WL 3090720 (E.D. Pa. June 20, 2013)(dismissing with prejudice claim for damages

under Article 1, Section 1of the Pennsylvania Constitution);*G.S. ex rel. J.A. v. Sch.

Dist. of City of Monessen*, CIV.A. 11-1643, 2012 WL 1328566 (W.D. Pa. Apr. 17,

2012)(same); *Bayer v. Monroe Cnty. Child & Youth Servs.*, 3:04-CV-02505, 2007

WL 3034009 at *13 (M.D. Pa. Oct. 15, 2007)(same), *reversed on other grounds*,

*Bayer v. Monroe Cnty. Children & Youth Servs.*, 577 F.3d 186 (3d Cir. 2009).

Slater cites one case to the contrary—*Harley v. Schuylkill County,* 476 F.Supp. 191 (E.D.Pa. 1979)(holding that the plaintiff can proceed under the Pennsylvania Constitution on a claim for damages). But that case is not binding on this Court, and it is stands against the great weight authority of more recent cases holding otherwise. Moreover, *Harley* is not persuasive as it relied on *Erdman v. Mitchell,* 56 A. 327 (Pa. 1903), for support, but *Erdman* dealt with a claim for injunctive relief, not a claim for monetary damages.

"Although monetary relief is barred for claims under the Pennsylvania Constitution, equitable remedies are available." *Pocono Mountain,* 442 F. App'x at 688. In this case, Slater is seeking monetary relief; he is not seeking equitable relief. Given the great weight of authority that there is no cause of action for monetary damages under the Pennsylvania Constitution including under the particular provision at issue in this case, we predict that the Pennsylvania Supreme Court will conclude that there is no cause of action for monetary damages under Article 1, Section 1 of the Pennsylvania Constitution. Thus, we recommend that the defendants be granted summary judgment as to Slater's claims under the Pennsylvania Constitution.

## F. The Unserved Defendants Should Be Dismissed.

Counsel has not entered an appearance on behalf of the following: the psychiatrist identified in the second amended complaint only as Ramen; the nurse identified only as Gene; and the physician's assistant identified only as Tony. It appears that these individuals have not been properly served with the second amended.

Federal Rule of the Federal Rules of Civil Procedure 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign county under Rule 4(f) or 4(j)(1).

Although the second amended complaint was filed more than two years ago, Slater has not made any effort to amend the complaint to fully identify the unserved defendants. Under such circumstances, the claims against those defendants should be dismissed.

## IV.  Recommendations.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the moving defendants' motion (doc. 76) for summary judgment be granted as to all claims except the 42 U.S.C. § 1983 claim against defendant Masci based on the March 2009 use-of-force incident.   It is further recommended that that the unserved defendants be dismissed.   If the Court accepts this Report and Recommendation, the only remaining claim will be the claim aginst defendant Masci based on the March 2009 use-of-force incident.   It is recommended that the case be listed for trial as to that claim.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.   Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.   The briefing requirements set forth in Local Rule 72.2 shall apply.   A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the

findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 20th day of November, 2013.

_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge